Application of INTERNATIONAL NICK-
EL COMPANY, Inc.

Patent Appeal No. 6392.

United States Court of Customs
and Patent Appeals.

June 1, 1960.

Rehearing Denied Nov. 3, 1960.

Aaron R. Townshend, Washington, D. C., Fred A. Klein, New York City, (A. W. Deller, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge C. WILLIAM KRAFT, Jr.[1]

WORLEY, Chief Judge.

The parties agree that one purpose of the Trade-Mark Act of 1946, popularly known as the Lanham Act, was to rid the Patent Office of trademarks that were not being used. To effect that result Congress incorporated Section 8 which, in pertinence, reads:

[1] United States District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'CONNELL*, pursuant to provisions of Section 292(d), Title 28 United States Code.

Section 8(b). "Cancellation of republished prior registrations unless affidavit of use filed

"Any registration published under the provisions of subsection (c) of section 12 of this Act shall be canceled by the Commissioner at the end of 6 years after the date of such publication unless within 1 year next preceding the expiration of such 6 years the registrant shall file in the Patent Office an affidavit showing that *said mark is still in use* or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark" (15 U.S.C. § 1058(b), 15 U.S.C.A. § 1058(a)). (Italics supplied.)

Patent Office Rule 2.162(b), Rules of Practice in Trade-Mark Cases, 15 U.S. C.A. Appendix, which is not challenged, requires that "A specimen or facsimile showing the mark as currently used should be submitted with and referred to in the affidavit."

■ The record shows that appellant has separately registered two trademarks. One is "Ni-Tensyl" for use on "Nickel-Containing Iron Castings." The other is "Ni-Tensyliron," also for use on "Nickel-Containing Iron Castings." Although the registration directly involved in this appeal is the mark "Ni-Tensyl," the specimen label submitted with the affidavit is "Ni-Tensyliron." Both the examiner and Commissioner, through the Assistant Commissioner, held that use of the latter did not constitute trademark use of the former within the meaning of Section 8. The correctness of that holding is the sole issue here. That, in turn, depends on what Congress intended Section 8 to accomplish, and particularly what it intended the words "said mark is still in use" to mean. It is the Congress, of course, which makes the policy and writes the law. It is our responsibility to construe the law harmoniously with the Congressional purpose. Here, there is ample evidence of legislative history supplied by counsel that Congress intended to eliminate the trademark "deadwood" in the Patent Office, but there is no indication it intended the words "said mark is still in use" to have any unusual or extraordinary meaning.

■ Basic to the various arguments advanced by appellant is, in appellant's words, "that the word *'iron'*, in essence, neither adds to nor detracts from the mark 'Ni-Tensyl', particularly in view of the unequivocal fact that the goods bearing the trademark are *iron* castings"; arguing therefrom that "Ni-Tensyl" and "Ni-Tensyliron" are one and the same within the meaning of Section 8.

We are unable to reconcile that theory with our understanding of the language in Section 8. "Said mark" here is "Ni-Tensyl," nothing more. Yet appellant contends that it continues to be "said mark" despite addition of new matter which so changes its sound, appearance, spelling, and meaning as to result in a different word. That argument does not impress us as being literally, logically, or, as we read Section 8, legally, sound. That appellant, at least at one time, also thought the two marks were different is best evidenced by its troubling to separately register each mark. And to hold, as appellant would have us do, that "Ni-Tensyl" perpetuates its identity as "said mark" and "still in use" by merely incorporating it into "Ni-Tensyliron" is, we fear, a sure way to stretch Section 8 into such a trademark Mother Hubbard as to defeat the clear purpose of that section. We assume appellant's argument would be the same if the marks were, for example, "Ni-Tensyl" and "Ni-Tensylironcontainingnickel," respectively.

Appellant urges this court to give Section 8 a "strict" interpretation and attempts to support that position by stating:

"Section 8 was not enacted to place a confiscatory weapon in the hands of the Patent Office whereby it would be in a position to snuff out the rights of a trademark proprietor. Thus, this section should be construed strictly not only because it

involves a penalty, but also because a holding that Appellant's trademark is not in use would throw a cloud over and cast doubts around Appellant's common-law rights in and to its mark. Section 8 has been interpreted by the Patent Office in derogation of Appellant's common-law rights and such construction, it is respectfully submitted, is contrary to established and controlling legal principles and authorities."

There are several answers to that argument. First, in the absence of convincing evidence of a contrary Congressional intent, it is our duty to give words their usual and ordinary meaning. It is not for us to substitute our views of what we might think Congress *should have said* for what Congress *actually said*. Here, appellant fails to establish any valid reason for giving the involved section a "strict," as opposed to what we assume would be the opposite, or "liberal," construction. It must be remembered that the purpose of Section 8 is to eliminate the trademark deadwood cluttering the Patent Office files.

Second, we agree with appellant that Section 8 was not enacted to place a confiscatory weapon in the hands of the Patent Office. It is merely a valid exercise of Congressional authority in pursuit of a legitimate aim.

Third, we are aware of no authority, and appellant cites none, by which Section 8 would affect appellant's right to use as distinguished from its statutory right to register.

Section 8 merely lays down the ground rules for those trademark owners interested in keeping their registrations alive. It also, and we think quite considerately, makes provision for showing a satisfactory excuse for non-use. Here, if the mark for which renewal is sought had still been in use, it should have been no problem for appellant to have satisfied the statute; or, if not still in use, to have accepted the invitation to show cause for non-use. Since neither was done the mark must be considered as a part of the

trademark deadwood Congress intended to eliminate. We see no other conclusion consistent with the evident Congressional purpose.

The Patent Office actions regarding other matters which have arisen under Section 8, to which appellant directs our attention, are interesting but hardly controlling here. Neither is Continental Distilling Corp., 254 F.2d 139, 45 CCPA 863, which involved a different set of facts, sufficiently in point to control here. Each case must be decided on the basis of its own facts. The decision is affirmed.

Affirmed.

RICH, Judge (dissenting).

The broad issue is whether, on the record here, the trademark "Ni-Tensyl" is deadwood.

The more specific statutory issue is whether this registered trademark is "still in use" so that appellant is entitled to maintain on the register its 1933 Registration, No. 302,033, granted under the 1905 Act and republished August 15, 1950 under section 12(c) of the Lanham Act, 15 U.S.C.A. § 1062(c).

Stated another way, the question is whether the Commissioner of Patents is obliged by section 8(b) of the Lanham Act to cancel that registration because appellant has shown in its section 8 affidavit use only of "Ni-Tensyliron."

*Let it be noted at the outset that section 8 does not require that the registered trademark be in use in any particular manner.* It requires only that it be "still in use."

The examiner refused to accept the affidavit only for the reason that the mark shown on the specimen label submitted with it "includes the term 'Iron' in the mark whereas the mark as registered is shown merely to be 'Ni-Tensyl'." Appellant protested this refusal and refusal and received in reply a "Commissioner's Order" approving of the action and saying in part:

"As pointed out in the request for reconsideration, the mark 'Ni-Ten-

syliron' was registered for nickel-containing iron castings on February 26, 1946, No. 419,628. The two registrations would therefore indicate that the registrant has used and registered two marks for the same goods, and it is urged that the examiner can not properly object to this. The examiner has not objected to the use and registration of the two marks but it is assumed that a specimen showing use of "Ni-Tensyl" would have been submitted with the Section 8 affidavit if available, and a showing of use of a different mark *of another registration* is not acceptable." [Emphasis mine.]

The Commissioner was asked to reconsider that "Order" and in response rendered the "Decision" appealed from (113 USPQ 351) which stated:

" * * * the question is whether the mark shown on the specimen submitted with the affidavit to show current use of the registered mark *is the same word mark* as that shown by the registration.

"Both the Patent Office and registrant have recognized 'Ni-Tensyl' and 'Ni-Tensyliron' as *different marks, since the former was registered* on March 21, 1933 as No. 302,-033, *and the latter was registered* on February 26, 1946 as No. 419,-628. [Emphasis mine.]

It is my view that the foregoing quotation asks the wrong question and assigns to the fact of dual registration an unjustifiable significance. The majority has simply adopted the Patent Office view. I see nothing relevant in the registration of "Ni-Tensyliron" and believe this case must be decided without regard to that fact.

In my opinion the cancellation of the twenty-seven year old registration of "Ni-Tensyl" on the theory of non-use defeats the basic purposes of the Lanham Act, which were to provide better protection to trademark owners and to make the registration system of greater use to the public. Correlative to the latter was a desire to get on the registers as many of the trademarks being used in commerce as possible so that they would be available for search purposes. The majority decision thwarts both of the above basic objectives. A trademark owner is losing his registration just at the time when it acquires whatever advantages flow from "incontestability" as a result of its republication under section 12(c) and the public registration records are being made to show that appellant's rights to "Ni-Tensyl" may have lapsed (a logical implication of cancellation of a registration) when in fact they have not.

The majority appears to believe that its decision flows inevitably by inexorable logic from the wording of the statute. This is demonstrably not the case. The most one can wring from section 8 is that the *"said mark"* must be *"still in use."*

In spite of what the majority opinion says, there is no argument about what the "said mark" is. It is "Ni-Tensyl." The only question to be decided is whether proof of use of "Ni-Tensyliron" shows that it is "still in use." The decision on this question has not been foreordained for us by Congress in the wording of section 8 for it is as *logical*, in my opinion, to say that "Ni-Tensyl" is "still in use" as to say that it is not.

This is a *fact* question. I can find nothing in the statute which even suggests how we shall decide it, to say nothing of requiring any particular decision. On this point Congress was as silent as the Sphinx, though the majority seems to have found it so eloquent that only one result in this case is conceivable.

My reason for saying that "Ni-Tensyl" is "still in use," which I think is logically sound, is based on two facts. First, the goods for which the mark is registered are iron castings containing nickel. Second, nothing is more descriptive of an iron casting than the word "iron," whether or not the casting contains nickel. A purely descriptive word is devoid of trademark significance. Therefore, when the mark "Ni-Tensyliron" is

applied to an iron casting—and trademarks in use are applied to the goods or otherwise used in association with them and not *in vacuo*—the only part of that mark having any trademark significance or functioning as a trademark is "Ni-Tensyl." That mark is right there staring one in the face. It is not so submerged in another mark as to lose its identity or significance as a trademark. It is the *only* thing of trademark significance in the phrase "Ni-Tensyliron castings." How can it be said that it is not "still *in use*"?

Appellant's position in this case, and I think it is a sound one, is "that *it is not using two different trademarks in the trademark sense or usage of trademarks. Registrant is using in principle and in the trademark sense but one trademark.*" It has insisted that its one mark is "Ni-Tensyl" and that it re-registered it "in the form of 'Ni-Tensyliron'." Appellant asks the very pertinent question, to which the majority gives no answer, whether there is any real difference, in the trademark sense, between the following forms of the mark *when it is used on iron castings:*

> Ni-Tensyl
> Ni-Tensyl Iron
> Ni-Tensyl-Iron
> Ni-Tensyliron

All the majority has to say is that they *are* "different."

I do not contend that, in one sense, "Ni-Tensyl" and "Ni-Tensyliron" are not two different marks. They differ, of course. So would there be two different marks, in this sense, if we had "Ni-Tensyl" in script and in Roman block letters; or "Ni-Tensyl" with a rectangular line border around it and with an oval border. On these four variants the Patent Office would be quite willing, I am sure, to grant four *registrations*, if one asked for them. But in the broader and fundamental sense, there would not be four trademarks but four *versions* of the single word mark "Ni-Tensyl." Everyone knows that multiple registrations of the *same mark* are common.

There is nothing in section 8 which requires that a showing be made that the mark is in use in its original version. Indeed, the Patent Office rules obviously contemplate that changes will be made in saying that a specimen of the mark *"as currently used"* should be submitted [Trademark Rule 2.162(b)]. In other cases the office has *accepted* section 8 affidavits showing changed and hence "different" marks. In Ex parte Petersen & Pegau Baking Co., 100 USPQ 20, the mark in use differed substantially in typography and background from the registered mark. They were "different." In Ex Parte The Hanna Paint Mfg. Co., 103 USPQ 217, the word portion of the mark was changed from "arcuately displayed fancy capital letters" to "block letters in a straight line" and a picture of a man walking was eliminated entirely from the mark as registered. Yet in those cases the registered mark was considered to be "still in use."

The present case appears to have arisen because the Patent Office took a different view of changes in the *wording* of trademarks than it takes of changes in typography, arrangement, or pictorial background. I see no reason for such an arbitrary distinction. Changes in wording may or may not destroy the identity of the original mark. In this case my view is that the annexation of the purely descriptive word "iron" clearly left the mark "Ni-Tensyl" intact.

In the only previous case we have had on this point of law, In re Continental Distilling Corp., 254 F.2d 139, 45 CCPA 863, we held that a showing of use of "Yankee Clipper" on whisky did not show use of either "Yankee" or "Clipper," the registrations of which were sought to be maintained by affidavits under section 8. I agree with the majority that the case is not controlling, but I would like to point out what the distinction is. In that case there were three distinct *arbitrary* word marks meaning different things. Here we have but a single trademark, in one version of which a short descriptive word, the first word in the name of the goods, has been at-

tached to the mark. Therefore the mark is "still in use."

The only reason I can find in the majority opinion in support of the decision it feels compelled to arrive at by the wording of the statute is that there are "two trademarks" (allegedly proved to exist by two registrations) and that they are "different." Only one is in use, *therefore* the other is "deadwood." This non sequitur will strike trademark owners as a novel idea, and probably with considerable shock. But let them be forewarned. If the owner of the famous trademark "Kodak," which I assume has been registered for photographic film, should decide to mark its packages "Kodakfilm," "Kodak" would, according to the reasoning of the majority, cease to be in use, become "deadwood," and upon the first occasion when an affidavit of use was required to be filed showing that "Kodak" was "still in use" (renewal under Sec. 9, 15 U.S.C.A. § 1059, for example), it would be refused and the registration cancelled. I am unable to see how this attitude carries out any legislative purpose. It protects neither trademark owners nor the public. Neither is it required by the language of section 8.

The mere existence of *difference* between two marks is not a logically sound basis on which to predicate a decision that one of them is not in use when only the other one is; for the greater may include the lesser, or the two may be merely different versions of one trademark, or two ways of using a single mark—to mention some of the possibilities.

As for carrying out the "evident Congressional purpose," I have already suggested that appellant is not being helped any in the protection of its trademarks by this decision. But what about the public? How does it benefit by this cancellation? It would be highly misleading to one searching the register for possible conflicts with proposed marks not to have the registration of "Ni-Tensyl" there because, regardless of how the majority applies section 8, the International Nickel Company is applying that mark to its goods, with the first word in the name of the goods attached to it, and anyone adopting that or a confusingly similar mark would be borrowing trouble. It would perhaps be even more misleading to have the registration in the "dead" search files marked "Cancelled," implying that its use had been given up. This, furthermore, might tend to damage appellant, for it is a basic principle of trademark law that unexcused non-use of a trademark results in destruction of the owner's exclusive rights therein. Factual adjudications of non-use should be made with great caution.

I disagree with the argument made on behalf of the Patent Office that the purpose of section 8 is "to have the * * registers reflect contemporary commercial trademark usage." That may be the purpose of section 7(d), 15 U.S.C.A. § 1057(d) which provides for amendment of registrations (a recognition of the principle that change and hence difference does not necessarily imply non-use of the original), but clearly it is not the purpose of section 8.

Robert's "The New Trade Mark Manual" (1947), page 105 says:

"The purpose of this affidavit of use is to remove *abandoned marks* from the register so that those which remain on the register may be deemed to be 'live' marks and in use by the registrant." [Emphasis mine.]

The automatic cancellation of registrations as to which no affidavits are filed is the principal method by which the deadwood is eliminated and has been very effective in achieving that congressional intent. It was never intended, however, that a trademark should be regarded as abandoned or as deadwood just because its form of use had been altered. Abandoned marks are those which are given up altogether or which belonged to owners who went out of business, the major cause of trademarks falling into the "deadwood" category. See, for how section 8 has worked out in practice, Merchant, "The Section 8

Affidavit-Use and Excusable Non-Use," 49 T.M.Rep. 911 (1959).

The only countervailing interest to that of the appellant here is a very general public interest in having the register purged of marks which are *clearly* dead and I believe our decision as to use should be one which will carry out that congressional intent.

In my judgment the cancellation of "Ni-Tensyl" would tend to pollute rather than to purge the records. They would be rendered misleading. I think that logic, common sense, and sound trademark law lead to the conclusion that proof of use of "Ni-Tensyliron" on iron castings shows that the trademark "Ni-Tensyl" is "still in use."

This case turns on a simple *fact* issue, not on statutory construction—whether "Ni-Tensyl" is deadwood, as I said at the beginning. The majority makes this clear by repeated reference to the "clear purpose" of section 8 and the Congressional intent to "eliminate the trademark 'deadwood'." Nowhere in its opinion, however, can I find any *reason* for deciding that "Ni-Tensyl" *is* deadwood. That fact, which decides the case, seems to have been assumed from the beginning. True, the majority says "Ni-Tensyliron" *differs* from "Ni-Tensyl" in sound, appearance, spelling and meaning, but this does not show "Ni-Tensyl" to be either out of use or dead. The majority is also afraid that a decision holding that "Ni-Tensyl" is "still in use" when incorporated in "Ni-Tensyliron" would so stretch section 8 as to defeat the purpose of section 8. This fear is without foundation and is not a very adequate reason for burying "Ni-Tensyl" alive.

SMITH, Judge (dissenting).

The majority opinion seems to me to place an undue emphasis on the strictly legal aspects of the issue before us. It is my opinion that all we are required to do under the express language of section 8 of the Lanham Act is to decide a simple fact issue: Is the mark "Ni-Tensyl" still in use?

In arriving at its decision, the majority opinion attaches more significance than I do to the name used on the label specimens showing the mark and does not give as much legal effect as I would to the sworn allegations of use in the affidavit filed by appellant.

It is significant to me that the affidavit of use, after referring to the registration of the mark "Ni-Tensyl" states:

"* * * that the mark shown in the aforesaid registration has been continuously used by *said* corporation and related companies of said corporation, in interstate and/or foreign commerce, on goods and/or in advertising, for five consecutive years, from July 2, 1951 to the present, in connection with the following goods recited in the registration: nickel-containing iron castings * * *."

The labels referred to in this affidavit show the mark "Ni-Tensyl" to be still "in use," as that term is used in section 8. I do not regard the addition of the descriptive word "iron" on the labels as evidence which justifies cancellation of registration for non-use of the mark "Ni-Tensyl" under section 8(b) of the Lanham Act.

It is unfortunate that the affidavit filed on behalf of appellant was not more explicit as to the facts contemplated by Rule 2.162(a) (3), and upon which the positive averments of use were made. It is seen particularly in the failure of the affidavit to recite such pertinent facts as may have a bearing on the question of non-use of the registered mark. It seems clear to me from the affidavit that appellant considers its use of "Ni-Tensyliron" to constitute a use of its mark "Ni-Tensyl."

However, in view of the opposite factual conclusion reached by the Patent Office and by the majority, from their reading of the same affidavit, prudence suggests that in every case where the specimens of a mark deviates in any manner whatsoever from the mark as

registered the section 8 affidavit required by Rule 2.161 should be most explicit in its recital of the facts of use. Rule 2.-162(a) (3) enumerates the facts required to show that the mark as described in the registration is still in use and to show that in using the changed specimens there is no intent to abandon the mark.

For these reasons, I am unable to agree with the conclusion reached by the majority and respectfully dissent from the same. I would find as a factual matter the mark "Ni-Tensyl" is still in use for the reasons more fully set forth in the dissenting opinion of Judge RICH. I would therefore reverse the decision below.